UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| MATTIE JEAN HICKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 4:13-cv-106-RLY-TAB |
| CAROLYN W. COLVIN Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.      Introduction**

Plaintiff Mattie Hicks appeals the Administrative Law Judge's decision denying her application for supplemental security income. Hicks filed for supplemental security income on March 22, 2010, and alleges her disability began on January 1, 2009. [Filing No. 13-2, at ECF p. 11.] Hicks's alleged impairments include cervical and lumbar degenerative disc disease, asthma, Leiden factor V deficiency, and bipolar disorder. The ALJ found her physical impairments to be severe, her bipolar disorder to be non-severe, and found that Hicks had a residual functional capacity[1] to perform light work with restrictions. Hicks argues that the ALJ did not consider all the relevant medical evidence, failed to discuss Hicks's GAF scores,[2] and failed to provide the vocational expert a hypothetical question that accounted for Hicks's bipolar disorder. The Commissioner argues the ALJ supported his decision with substantial evidence and built the

---

[1] RFC is what a claimant can still do despite the claimant's physical and mental limitations.

[2] A GAF score, or global assessment of functioning score, measures an individual's overall level of psychological, social, and occupational functioning. Clinicians use a GAF score to value an individual's ability to carry out daily activities and an individual's overall ability to function.

1

requisite logical bridge. For reasons set forth below, the Magistrate Judge recommends that Hicks's brief in support of appeal [Filing No. 17] be granted and the Commissioner's decision be remanded.

## II. Discussion

*A. Standard of Review*

The Social Security regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled: whether the plaintiff (1) is currently unemployed, (2) has a severe impairment, (3) has an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations, (4) is unable to perform past relevant work, and (5) is unable to perform any other work in the national economy. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id*. For a period of disability, the claimant must establish that she was disabled prior to her date last insured to be eligible for disability insurance benefits. *See* 20 C.F.R. §§ 404.315(a)(1), 404.320(b)(2); *Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012).

The Court must uphold the ALJ's decision if substantial evidence supports his findings. *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003). "[T]he substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The ALJ need not mention every piece of evidence in the record, so long as he builds a logical bridge from the evidence to his conclusion. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

*B. Substantial evidence*

Hicks claims that the ALJ failed to adequately discuss all her psychological evidence in finding her bipolar disorder non-severe. [Filing No. 17, at ECF p. 4.] Although the ALJ cites to medical records from June 18, October 19, and December 15, 2010, to support finding a non-severe limitation, Hicks argues the ALJ did not address the Lifespring Mental Health notes or her suicide attempt in June 2011. [Filing No. 22, at ECF p. 1.] Specifically, Hicks argues that the ALJ dispatched with thirty-five pages of mental health treatment notes in two sentences. [Filing No. 17, at ECF p. 4-5; Filing No. 22, at ECF p. 1.] The Commissioner argues the ALJ's citation to the Lifespring notes and reference to one month of Hicks's treatment means he considered the evidence. [Filing No. 20, at ECF p. 5.]

The ALJ concluded Hicks's bipolar disorder is non-severe because it "does not generally cause more than minimal limitation in the claimant's ability to perform basic mental activities." [Filing No. 13-2, at ECF p. 13.] In making his decision, the ALJ listed her reported symptoms of "crying spells, fatigue, anger, irritability, social isolation, increased sleep, distractibility, and panic." [Filing No. 13-2, at ECF p. 13.] He acknowledged reports of her anxious and depressed mood, but noted that Hicks has a normal thought process, speech, and memory. Moreover, the ALJ reported that Hicks received medication and outpatient counseling that improved her symptoms. The ALJ further found that Hicks "was hospitalized in June 2011 after a suicide attempt, but by her outpatient session in July 2011, her condition improved significantly. Without more, the undersigned must find this impairment non-severe." [Filing No. 13-2, at ECF p. 13.] The ALJ concluded that Hicks's bipolar disorder was a non-severe impairment because it was consistent with other medical reports. To support this assertion, the ALJ provided a string citation of exhibits from the record. [Filing No. 13-2, at ECF p. 14.]

3

The ALJ failed to discuss how Hicks's condition improved after her suicide attempt. Instead, he provided a conclusory statement that Hicks significantly improved by July 2011. "While the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." Godbey v. Apfel, 238 F.3d 803, 808 (7th Cir. 2000). The ALJ failed to provide a single example to support his conclusion that she significantly improved in July 2011. Thus, the ALJ failed to build a logical bridge from the evidence to his conclusion that Hicks's mental condition was non-severe.

Though the ALJ failed to provide evidence to support his conclusion that her condition significantly improved, he did cite to evidence to support his finding for Hicks's bipolar disorder. The ALJ found Hicks's bipolar disorder was non-severe because Hicks only had a mild limitation with her daily living, social functioning, and concentration, persistence and pace. [Filing No. 13-2, at ECF p. 14.] The ALJ reported that Hicks was capable of preparing simple meals and cleaned with her children's help. He also found her social functioning mildly limited as she had no history of interpersonal conflicts. The ALJ further noted that Hicks went shopping with her children and played bingo. [Filing No. 13-2, at ECF p. 14.] While the ALJ provided evidence to support his mild limitation finding, he only cited to medical reports from October and December 2010. The ALJ failed to include any evidence from the reports created after Hicks's June 2011 suicide attempt to support his finding that Hicks's daily living, social functioning, and concentration, persistence, and pace was mildly limited by her bipolar disorder. The ALJ's failure to reference this significant evidence in the record precludes a finding that the decision below is supported by substantial evidence.

The Commissioner argues that any error on the part of the ALJ was harmless. [Filing No. 20, at ECF p. 10.] Under the harmless error standard, the Court must be able to predict with great confidence the same result on remand making remand not necessary or productive. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). In reviewing the facts, the Magistrate Judge finds this case a close call. During her July 7 outpatient counseling session, the treatment notes show Hicks described her new church's support system, discussed the boundaries she was setting with her sons, and mentioned she began talking with her spouse again. [Filing No. 13-19, at ECF p. 18.] On July 20, a clinician noted she was actively working to reconcile with her husband. [Filing No. 13-9, at ECF p. 20.] But on July 21, Hicks discussed her decision to have her son and grandson live with her, and she expressed "frustration with realizing that her interaction with her son's [sic] have triggered her depressive symptoms to worsen." Hicks further discussed setting boundaries and how to respond when others do not abide by those boundaries. [Filing No. 13-9, at ECF p. 22.] During this time period, Hicks received GAF scores consistently ranging from 45 to 48, which suggest a serious social or occupational functioning impairment.

It is not clear to the Magistrate Judge whether the same outcome would be reached on remand. Although the notes do show some improvement, the ALJ's statement that Hicks "improved significantly" is an overstatement. The ALJ never discussed the treatment notes to support his decision and only cited to the treatment notes once in his entire opinion. The ALJ failed to mention that Hicks was diagnosed with Major Depressive Disorder, Mood Disorder, Panic Disorder, and Post Traumatic Stress Disorder on July 25, 2011. Moreover, the ALJ failed to acknowledge that Hicks continued outpatient treatment beyond July 2011. Instead, the ALJ

5

used a mere two sentences to inadequately capture thirty-five pages of significant treatment notes. [Filing No. 17, at ECF p. 2-5.]

The Commissioner raises several arguments in support of the ALJ. First, the ALJ could not have known Hicks's condition began to improve in July 2011 if he ignored the treatment notes. [Filing No. 20, at ECF p. 5.] However, this Court must determine whether the ALJ minimally discussed the evidence, not whether he ignored it. *Godbey*, 238 F.3d at 808. Second, the Commissioner argues that citing to the treatment notes is sufficient under the substantial evidence standard. [Filing No. 20, at ECF p. 6.] A mere citation to the treatment notes is not sufficient to establish substantial evidence. Some discussion is required. *See Godbey*, 238 F.3d at 808 (selectively discussing a medical report and not addressing sections that support plaintiff's claim required remand); *see also Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider all relevant evidence."). Third, the Commissioner concedes that the treatment notes could have been discussed in greater detail, but the ALJ articulated the evidence that Hicks's condition began to improve with medication and outpatient counseling. [Filing No. 20, at ECF p. 8.] Absent any meaningful discussion of the treatment notes, there is no logical bridge from the evidence to the ALJ's conclusion. Thus, the Magistrate Judge recommends remand on this issue.

*C. GAF scores*

Hicks argues the ALJ should have taken into consideration her multiple GAF scores from her months of outpatient counseling. [Filing No. 17, at ECF p. 5.] Hicks cites Administrative Message 10366 to argue that the GAF provided a "longitudinal picture" instead of a "snapshot" of Hicks's condition. [Filing No. 17, at ECF p. 5.] The Commissioner argues that the ALJ

appropriately discredited the GAF scores. The Commissioner argues that GAF scores provide "no way to standardize measurement and evaluation" and that "a GAF needs supporting evidence to be given much weight." [Filing No. 20, at ECF p. 9-10.]

The treatment notes show Hicks received a GAF score of 45 on May 17, 2011, July 25, 2011, and August 1, 2011. [Filing No. 13-19, at ECF p. 15; Filing No. 13-19, at ECF p. 25; Filing No. 13-20, at ECF p. 2.] Hicks received a GAF score of 46 on June 24, 2011, August 17, 2011, August 31, 2011, September 19, 2011, and October 21, 2011. [Filing No. 13-19, at ECF p. 17; Filing No. 13-20, at ECF p. 4-10.] Hicks received a GAF score of 47 on July 7, 2011, July 20, 2011, and July 21, 2011. [Filing No. 13-19, at ECF p. 19-23.] While on December 27, 2010, February 7, 2011, February 10, 2011, April 21, 2011, and May 6, 2011, Hicks received a GAF score of 48. [Filing No. 13-19, at ECF p. 3-6; Filing No. 13-19, at ECF p. 11-13.]

The ALJ discredited the GAF scores because the score has no "direct correlation to the severity requirements [of the] mental disorders listings." [Filing No. 13-2, at ECF p. 14.] Courts have found that the failure to mention multiple GAF scores does not require remand when the ALJ instead relies on the medical record's underlying narrative to support his finding. *Yurt v. Colvin*, No. 1:12–CV–00246, 2013 WL 3421918, at *10 (N.D. Ind. July 8, 2013). Here, the ALJ's finding relied on outdated reports of her mental condition in 2010, well before her attempted suicide, while he made short shrift of her most recent treatment notes. Therefore, the Magistrate Judge recommends the case be remanded so that the ALJ can address the more recent treatment notes, including Hicks's GAF scores.

*D. Hypothetical question*

Hicks also argues that the ALJ failed to list her bipolar disorder in his hypothetical question to the vocational expert. [Filing No. 17, at ECF p. 6-7.] The Commissioner argues that

7

the ALJ need not include impairments deemed minimal in his hypothetical question. Even so, the Commissioner asserts that the ALJ still considered the non-severe bipolar disorder in his hypothetical question. [Filing No. 20, at ECF p. 13-14.]

The ALJ found Hicks's bipolar disorder as only having a mild limitation in her daily living, social functioning, and concentration, persistence and pace. [Filing No. 13-2, at ECF p. 14.] Hicks could care for her hygiene, fix meals, and clean. Moreover, she had no history of interpersonal conflict, was able to manage money, and shop with her children. Though this finding was based on outdated evidence, the ALJ did take Hicks's non-exertional impairment into consideration in his hypothetical by limiting her to simple, routine, repetitive work with occasional contact with co-workers and the general public. [Filing No. 13-2, at ECF p. 15.]

The ALJ also considered her exertional impairments for his RFC determination because the ALJ's found Hicks had the capacity for "light work" with "a sit/stand option." [Filing No. 13-2, at ECF p. 15.] Based off of both the exertional and non-exertional impairments included in the hypothetical questions, the VE found Hicks capable of performing jobs as inspector, hand packer, and assembler. [Filing No. 13-2, at ECF p. 18.] Thus, ALJ adequately accounted for Hicks's non-exertional impairments even though he found them to be only a minimal limitation. However, because this case should be remanded on separate issues, the ALJ will have another opportunity to pose a hypothetical question accounting for Hicks's non-exertional impairments if needed.

### III. Conclusion

For the reasons set forth above, the Magistrate Judge recommends that Hicks's motion in support of appeal [Filing No. 17] be granted and the case be remanded for the ALJ to evaluate the 2011 treatment notes and GAF scores. Any objections to the Magistrate Judge's Report and

Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 05/15/2014

Distribution:

William Edward Jenner
JENNER, PATTISON, HENSLEY & WYNN, LLP
wjenner@wjennerlaw.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov